UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| KAREN YOUNG, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | 10 C 1737 |
| vs. | ) ) | Judge Feinerman |
| VILLAGE OF ROMEOVILLE, a municipal corporation, CHIEF ANDREW BARTO, individually and as agent for the Village of Romeoville, SERGEANT CHRISTOPHER BURNE (Star No. 338), individually and as agent for the Village of Romeoville, and OFFICER ERIC LARSEN, individually and as agent for the Village of Romeoville, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Karen Young brought this action under 42 U.S.C. § 1983 against the Village of Romeoville, Illinois, and three of its police employees. She alleges that Officer Christopher Burne and Sergeant Eric Larsen employed excessive force when arresting her, and that the Village and Police Chief Andrew Barto were aware of the officers' behavior but did nothing to stop it. Each individual Defendant is sued in his individual and official capacities. On July 16, 2010, the court dismissed the individual capacity claim against Barto. Doc. 14 (Guzman, J.). Defendants now move for summary judgment on the *Monell* claim against the Village and the official capacity claims against the individuals Defendants, but not on the individual capacity excessive force claims against Burne and Larsen. The motion is granted.

**Background**

The following facts are undisputed, either by the parties' agreement or because a party failed to respond pursuant to Local Rule 56.1(b)(3). *See Raymond v. Ameritech Corp.*, 442 F.3d

-1-

600, 608 (7th Cir. 2006); *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005).

On the evening of March 21, 2008, Young's husband, William Young, called the police to report an incident of domestic violence. When Officer Burne and Sergeant Larsen arrived, William explained that Young had battered him and then fled while carrying a knife. After searching the neighborhood, Larsen located Young on a neighbor's porch. Seeking to effectuate an arrest, Larsen asked Young three times to turn around; when Young failed to comply, Larsen grabbed her wrist and turned her around, using what he called "pain compliance." Larsen and Burne then placed Young in handcuffs and took her to the Romeoville police station. Young subsequently was convicted of domestic battery and violating a bail bond.

At the time of the incident, Officer Larsen had been a Field Training Officer for the Romeoville Police Department for approximately twelve years, and thus was familiar with the Department's Use of Force policy. On its first page, the policy provides:

> Only the minimum amount of force reasonably required to effect an arrest or control a person shall be used by members of the Romeoville Police Department. The force used by an officer shall only be that which is required to overcome the resistance being offered by an offender and to effect lawful objectives.

Doc. 34-1 at 1. Larsen trained incoming officers, including Sergeant Burne, on the policy. Larsen testified that when arresting Young, he employed a "one level" "escalation in the use of force," explaining: "Empty-handed control techniques, yes, it went up one level. If verbal commands do not work, then you have to, unfortunately, use hands-on. When that was done, it was done the miminalist amount of effort to contain somebody, especially with the possible weapon there."

**Discussion**

A. *Monell* **Claim**

"A municipality may not be held liable under § 1983 based on a theory of respondeat superior or vicarious liability. A municipality only may be held liable under § 1983 for constitutional violations caused by the municipality itself through its own policy or custom." *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) (citing *Monell v. Dept. of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 694 (1978)). Put another way, "local governments are responsible only for their *own* illegal acts" and may not be held "vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (internal quotation marks omitted). To prevail on a *Monell* claim, the plaintiff must show that a municipal employee's unconstitutional act was caused by: "(1) an express [municipal] policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002) (citation omitted); *see also Thomas v. Cook Cnty. Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010). In addition to showing that the municipality acted culpably in one of those three ways, the plaintiff must prove causation, demonstrating that the municipality, "through its deliberate conduct, … was the 'moving force' behind the injury alleged." *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997); *see also Connick*, 131 S. Ct. at 1358 n.5; *Gable*, 296 F.3d at 537.

Young seeks to establish *Monell* liability against the Village in the first and second of the three ways articulated by the Seventh Circuit. Neither effort succeeds.

1. **Express Policy**

Young maintains that the Romeoville Police Department's express Use of Force policy caused her to suffer constitutional injury. She asserts that the Village employs a "use of force continuum" that permits officers "to escalate from verbal commands to physical force even when only verbal noncompliance [is] encountered." Doc. 31 at 2. Because Sergeant Burne and Officer Larsen "claim to have been acting in accord with [this] policy," Young concludes, the *Monell* claim "should be a question for the jury to decide." *Id*. at 4.

The record indisputably refutes Young's contention that the Use of Force policy caused the alleged excessive force. "The express policy theory applies, as the name suggests, where a policy explicitly violates a constitutional right when enforced." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). To prevail on that theory, the plaintiff must "point to … language in the … policy that is constitutionally suspect." *Id*. at 381. Young does not and could not point to any such language in the Use of Force policy. Indeed, the policy states that officers may employ "[o]nly the minimum amount of force reasonably required to effect an arrest or control a person," and that "[t]he force used by an officer shall only be that which is required to overcome the resistance being offered by an offender and to effect lawful objectives." Doc. 34-1 at 1. The policy proceeds to instruct: "An officer will refrain from the use of excessive force, unwarranted physical force or verbal abuse. Force shall not be used in a punitive manner and its use will be discontinued when resistance stops." *Id*. at 12.

Young does not "articulate how the obvious consequence of enacting [the Use of Force policy] was that the [policy] would" lead Romeoville police officers to use excessive force in violation of the Fourth Amendment. *Rasche v. Vill. of Beecher*, 336 F.3d 588, 599 (7th Cir. 2003). Although the policy permits an escalation of force where reasonable and appropriate, it

expressly prohibits excessive or unwarranted force, and therefore cannot be said to have itself caused Young to suffer any constitutional injury. If Officer Larsen and Sergeant Burne applied excessive force when arresting Young, the violation was theirs and theirs alone. *See Palmer v. Marion Cnty.*, 327 F.3d 588, 597 (7th Cir. 2003) (affirming summary judgment where "the undisputed facts tend to show that the defendants adopted a policy that considered [plaintiff's] safety").

### 2. Widespread Practice

Although the Use of Force policy itself does not violate the Constitution, Young's *Monell* claim can proceed to trial if the record would permit a jury to find that there was "a widespread practice" of Romeoville police officers using excessive force "so permanent and well settled as to constitute a custom or usage with the force of law." *Gable*, 296 F.3d at 537. To prevail on this theory, Young must show that Village "policymakers were 'deliberate[ly] indifferen[t] as to [the custom's] known or obvious consequences.'" *Montano v. City of Chicago*, 535 F.3d 558, 570 (7th Cir. 2008) (quoting *Brown*, 520 U.S. at 407) (brackets in original). To show deliberate indifference, Young must demonstrate that the Village was "aware of a substantial risk" that its police officers would use excessive force and that it "failed to take appropriate steps to protect [her] from a known danger." *Frake v. City of Chicago*, 210 F.3d 779, 782 (7th Cir. 2000). And to show a "permanent and well settled" practice of excessive force, Young must point to "more than one instance, or even three," of such misconduct. *Thomas*, 604 F.3d at 303 (citations omitted); *see also Gable*, 296 F.3d at 538 ("three incidents were too few to indicate that the City had a widespread custom of which City policymakers had reason to be aware").

Young's complaint alleges that at least "as far back as 2000," Officer Larsen and Sergeant Burne "engaged in similar [excessive force] conduct with respect to other residents in

the Village," and that Chief Barto and the Village were aware of that conduct but "chose to take no action." Doc. 1 at ¶¶ 16-18. These allegations were held sufficient to survive a Rule 12(b)(6) motion to dismiss the *Monell* claim. Doc. 14. To survive summary judgment, Young was obligated to adduce evidence supporting her allegations. But Young has failed to produce "any evidence from which a jury could conclude that there was a widespread custom" of excessive force by Larsen, Burne, or any other Romeoville police officer. *Brandon v. Vill. of Maywood*, 157 F. Supp. 2d 917, 934 (N.D. Ill. 2001). And there is no indication in the record that the Village or Barto were aware of any previous incidents of excessive force or that they failed to respond appropriately to such incidents (assuming there were any). The only arrest reflected in the record is Young's. Even crediting her version of the arrest, the record would not permit a reasonable jury to find a "widespread practice" under *Monell*. *See Bryant v. Whalen*, 759 F. Supp. 410, 423 (N.D. Ill. 1991) (granting summary judgment where the record "fail[ed] to establish that the City's handling of excessive force complaints against police officers reflects a deliberate indifference to citizens' constitutional rights").

Perhaps in recognition of this lack of evidence, Young maintains that the Village failed to train adequately its officers on the use of force. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 131 S. Ct. at 1359. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Ibid*. (internal citation and quotation marks omitted, brackets in original); *see also Jenkins*, 487 F.3d at 492. "[D]eliberate

indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick*, 131 S. Ct. at 1360 (internal quotation marks omitted).

A month ago, in *Connick*, the Supreme Court explained that "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Ibid.* (internal quotation marks omitted); *see also Jenkins*, 487 F.3d at 492 (deliberate indifference in failure-to-train case can be shown by "a repeated pattern of constitutional violations makes the need for further training … plainly obvious to the city policymakers") (internal quotation marks omitted). As noted above, having adduced evidence only of her own arrest, Young cannot establish deliberate indifference by showing a "pattern" of excessive force by Romeoville police officers. *See Dye v. Wargo*, 253 F.3d 296, 299 (7th Cir. 2001) (summary judgment appropriate where plaintiff "has not offered any evidence that use of excessive force is common in [the municipality], indeed has not produced evidence of even one prior incident. Thus the City cannot be held liable on the theory that lack of more extensive training for [defendants] evinces a policy of using constitutionally improper force"); *Blackman v. City of Kokomo*, 2006 WL 694367, at *10 (S.D. Ind. Mar. 16, 2006) (same).

The Supreme Court in *Connick* recognized that deliberate indifference in a failure-to-train case also can rest on a "single-incident" theory of liability. *Connick*, 131 S. Ct. at 1361. The Court noted that *City of Canton v. Harris*, 489 U.S. 378 (1989), "left open the possibility

that, 'in a narrow range of circumstances,' a pattern of similar violations might not be necessary to show deliberate indifference." *Connick*, 131 S. Ct. at 1361 (quoting *Bryan Cnty.*, 520 U.S. at 409). The hypothetical offered in *Canton* was "of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." *Ibid*. (citing *Canton*, 489 U.S. at 390 n.10). *Canton* "theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the 'highly predicable consequence,' namely, violations of constitutional rights." *Ibid*. (quoting *Bryan Cnty.*, 520 U.S. at 409); *see also Jenkins*, 487 F.3d at 492 (deliberate indifference in failure-to-train case can be shown if "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the deficiency exhibits deliberate indifference on the part of the municipal policymakers").

*Connick* held that the narrow range of circumstances in which a "single-incident" theory of liability could prevail did not encompass the failure to train prosecutors in their obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). *See Connick*, 131 S. Ct. at 1360-65. It is unclear whether, after *Connick*, a municipality's failure to train officers in non-lethal handcuffing techniques theoretically could lead to "single-incident" liability in a failure-to-train case. Even if it could, Young has not made her case. A *Monell* failure-to-train plaintiff must do more than demonstrate that an "injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury causing conduct," since even adequately trained officers make mistakes. *Canton*, 489 U.S. at 391. Yet Young's only evidence on failure to train is that Officer Larsen was involved in training new officers on the use of force and on the Village's Use of Force policy. Young offers no evidence regarding the

particulars of the training or of the supervision and discipline of Romeoville police officers, much less evidence that would permit a reasonable jury to conclude "that such training, supervision, and discipline are so obviously inadequate as to result in the violation of constitutional rights." *Edwards v. Two Unknown Male Chicago Police Officers*, 623 F. Supp. 2d 940, 952 (N.D. Ill. 2009). As a result, Young cannot prevail on a "single-incident" theory of failure-to-train liability. *See Palmer*, 327 F.3d at 597 (failure-to-train claim failed where plaintiff "did not present so much as a scintilla of evidence that the defendants improperly hired, trained, or supervised the [municipal] staff"); *Martin v. Luckett*, 2011 WL 1231024, at *7 (N.D. Ill. Mar. 30, 2011) ("[T]he record does not show that individual defendants were not properly instructed on the use of force. That Plaintiff was injured during his arrest is not itself evidence of municipal liability.").

### B. Official Capacity Claims

"Actions against individual defendants in their official capacities are treated as suits brought against the government entity itself." *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Because there is no basis for municipal liability in this case, there similarly is no basis for the official capacity claims against the three individual Defendants. *See Grieveson v. Anderson*, 538 F.3d 763, 773 (7th Cir. 2008) (where *Monell* claims fail, so does official capacity claim); *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514-15 (7th Cir. 2007) ("Unless there is an unconstitutional policy, there cannot be official-capacity liability; only individual-capacity liability is possible."). Summary judgment accordingly is granted on the official capacity claims.

## Conclusion

For these reasons, Defendants' are entitled to summary judgment on the *Monell* claim against the Village and the official capacity claims against the individual Defendants. Trial will proceed on the individual capacity excessive force claims against Sergeant Burne and Officer Larsen. Because no claims remain against the Village and Chief Barto, they are dismissed as party defendants.

April 27, 2011                                                                 _____
                                                                                             United States District Judge